## RAPAPORT AND BENEDICT, P.C., ET AL. *v.* CITY OF STAMFORD ET AL. (13007)

Dupont, C. J., and Lavery and Landau, Js.

Argued May 25—decision released September 26, 1995

*William C. Turney,* for the appellants (plaintiffs).

*John F. Fallon,* for the appellees (defendants).

LANDAU, J. This is an appeal from the trial court's granting of the defendants' motion to dismiss the plaintiffs' complaint.[1] The plaintiffs claim that the trial court improperly (1) dismissed the complaint as to the named plaintiff, Rapaport and Benedict, P.C. (Rapaport), in that Rapaport's standing as a third party beneficiary provided a direct right of access to the Superior Court, (2) concluded that the plaintiff Joseph Reilly failed to exhaust his contractual remedies, (3) failed to hold an evidentiary hearing, and (4) failed to construe a disputed issue of fact in the plaintiffs' favor.

Neither the facts nor the procedural posture of this case are in dispute. In December, 1990, Reilly was a captain in the Stamford police department, working pursuant to the terms of a collective bargaining

---

[1] The plaintiffs in this case are Rapaport and Benedict, P.C., a Stamford law firm, and Joseph Reilly. The defendants are the city of Stamford; the board of finance of the city of Stamford; Joseph Tarzia, Daniel P. Malloy, Robert Harris, John Mallozzi, William J. McManus and David W. Schropfer, members of the board of finance of the city of Stamford; Patrick O'Connor, commissioner of finance of the city of Stamford; Peter Mynarski, treasurer of the city of Stamford; and Margaret Brown, comptroller of the city of Stamford.

agreement between the city of Stamford (city) and the Stamford Police Association (union). At that time, the Stamford board of ethics initiated an investigation of Reilly and other city employees. As a member of the union, Reilly was entitled to legal counsel from the city under the terms of the collective bargaining agreement.[2] After Reilly requested legal representation, the Stamford corporation counsel informed him that such representation could not be provided due to a conflict of interest.

Pursuant to his understanding of the agreement, Reilly engaged the services of Rapaport to represent him in connection with the proceedings before the board of ethics. During 1991 and 1992, Reilly incurred $135,376.84 in legal fees for Rapaport's services. The city reimbursed $30,973.41 of that sum, but has refused to make any further payment.

The collective bargaining agreement between the city and the police association provides that certain disputes are to be resolved through a grievance and arbitration process.[3] On October 6, 1992, Reilly requested that the

[2] Section 23 (A) of the collective bargaining agreement provides: "The City shall provide legal counsel for the defense of any member of the Association against whom a complaint originating from outside the Stamford Police Department has been filed which could result in the discipline and/or suspension of any member. The Corporation Counsel shall assume the legal defense of said member unless there is a conflict of interest. In the event that such a conflict of interest exists, the City shall reimburse the Association for all legal fees which are incurred in the defense of any such member of said Association. Said fees shall be reasonable and shall not be reimbursable if it is determined by either the Stamford Police Commission or other initial fact finder that the member's activities from whence the complaint arose were not within the scope of his authority as a police officer for the City of Stamford."

[3] Section 22 of the collective bargaining agreement provides in pertinent part: "(A) Should any employee or group of employees feel aggrieved, concerning his [or] their wages, hours or conditions of employment (including any claim that a permanent employee was removed, dismissed, discharged, suspended, fined or reduced in rank without just cause), adjustment shall be sought as follows:

union file a grievance on his behalf for the purpose of compelling the payment of the outstanding legal fees. The city subsequently denied Reilly's grievance.

On February 22, 1993, the plaintiffs filed a four count amended complaint. In the first count, Reilly alleged a breach of contract arising from the city's refusal to reimburse the full amount of legal fees incurred. In count two, Rapaport also alleged breach of contract, claiming that it was entitled to damages as a third party beneficiary of the agreement between the city and the union. Both plaintiffs claimed in count three that they had relied to their detriment on the city's partial payment of Rapaport's legal fees by continuing the attorney-client relationship and thereby incurring additional legal fees. In the last count, the plaintiffs alleged that the defendants had violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

The defendants filed a motion to dismiss the complaint, asserting that because the plaintiffs failed to

"1. The Association shall submit such grievance in writing to the Chief of Police, setting forth the nature and particulars of the grievance. . . .

"2. If such grievance is not resolved to the satisfaction of the Association by the Chief within eight (8) days after the receipt of the grievance by him, the Association may present such grievance in writing within seven (7) days thereafter to the Police Commission. . . .

"(B) If such grievance is not resolved to the satisfaction of the Association by the Police Commission within fifteen (15) days after the receipt of the grievance by it, or if the City shall desire to have any dispute with the Association concerning the interpretation or performance of this agreement resolved by arbitration, the Association, within ten (10) days after the expiration of said fifteen (15) day period, or the City, within ten (10) days of the last discussion between the Police Commission and the Association, may submit the dispute to the Connecticut State Board of Mediation and Arbitration for arbitration . . . . The decision of the arbitrator shall be binding and conclusive upon the City and the Association. The findings, decision or award of said arbitrator may be enforced by proper action in any court of competent jurisdiction. . . .

"(D) Nothing contained herein shall prevent an employee from presenting his own grievance and representing himself. . . ."

exhaust the contractual remedies available to them under § 22 of the collective bargaining agreement, the trial court lacked subject matter jurisdiction. The defendants argued that § 22 mandates that Reilly had to resort to arbitration when his grievance was not resolved to his satisfaction. They asserted that Reilly made no attempt to seek arbitration and that the plaintiffs failed to allege exhaustion of available contractual remedies in their complaint. After a hearing, the trial court agreed with the defendants' argument and granted the motion to dismiss. This appeal followed.

I

The plaintiffs first claim that the trial court improperly concluded that Rapaport was not a third party beneficiary of the collective bargaining agreement and therefore lacked standing to bring an action against the defendants.[4]

"The absence of standing precludes the existence of a court's subject matter jurisdiction and requires dismissal of the claim." *Third Taxing District* v. *Lyons*, 35 Conn. App. 795, 798, 647 A.2d 32, cert. denied, 231 Conn. 936, 650 A.2d 173 (1994). "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some

---

[4] Relying on *Flynn* v. *Newington*, 2 Conn. App. 230, 477 A.2d 1028, cert. denied, 194 Conn. 804, 482 A.2d 709 (1984), the plaintiffs also assert that, as a third party beneficiary, Rapaport was entitled to bring its action without first exhausting any contractual remedies afforded by the collective bargaining agreement. In *Flynn*, we recognized that "[t]he signatories to a collective bargaining agreement are not the only entities with rights which arise from that contract. The trustees of a pension and welfare fund are third party beneficiaries of the agreement and are not bound by the grievance-arbitration provisions of an agreement under federal law statutes, allowing them a direct right of access to the courts, without the necessity of arbitration. *Robbins* v. *Prosser's Moving & Storage Co.*, 700 F.2d 433, 436–37 (8th Cir. 1983)." Id., 238. Because we conclude that Rapaport was not a third party beneficiary, it is unnecessary to address this claim.

real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . *Unisys Corp.* v. *Dept. of Labor*, 220 Conn. 689, 693, 600 A.2d 1019 (1991)." (Internal quotation marks omitted.) *Presidential Capital Corp.* v. *Reale*, 231 Conn. 500, 504, 652 A.2d 489 (1994).

"A third party beneficiary may enforce a contractual obligation without being in privity[5] with the actual parties to the contract. See J. Calamari & J. Perillo, Contracts (3d Ed. 1987) §§ 17-1 through 17-4, pp. 691–719. Therefore, a third party beneficiary who is not a named obligee in a given contract may sue the obligor for breach. Id." *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 230–31, 654 A.2d 342 (1995). Thus, if the trial court correctly determined that Rapaport was not a third party beneficiary of the collective bargaining agreement, entitled to enforce its terms, it likewise correctly dismissed the complaint as to Rapaport for lack of subject matter jurisdiction.

In our analysis, we must observe the appropriate standard of appellate review. When "the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. Practice Book § 4061; *United Illuminating Co.* v. *Groppo*, 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Zachs* v. *Groppo*, 207 Conn. 683, 689, 542 A.2d 1145 (1988); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). *Morton Buildings, Inc.* v. *Bannon*, 222 Conn. 49, 53, 607 A.2d 424 (1992). [W]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a ques-

---

[5] " 'Privity' in this context refers to 'those who exchange the promissory words or those to whom the promissory words are directed.' J. Calamari & J. Perillo, Contracts (3d Ed. 1987) § 17-1, p. 691." *Gateway Co.* v. *DiNoia*, 232 Conn. 223, 230 n.6, 654 A.2d 342 (1995).

tion of law. . . . *Mulligan* v. *Rioux*, 229 Conn. 716, 740, 643 A.2d 1226 (1994)." (Internal quotation marks omitted.) *Gateway Co.* v. *DiNoia*, supra, 232 Conn. 229. In this case, the trial court's determination that the collective bargaining agreement did not create a third party beneficiary constituted a question of law. As in *Gateway*, the trial court in this case did not hear testimony concerning the intent of the parties. Rather, it based its decision that Rapaport was not a third party beneficiary exclusively on its reading of the collective bargaining agreement and the arguments of counsel at the hearing on the motion to dismiss. Consequently, our review of the trial court's ruling is plenary. See id., 230.

"The proper test to determine whether a [contract] creates a third party beneficiary relationship is whether the parties to the [contract] intended to create a direct obligation from one party to the [contract] to the third party."[6] Id., 231. We therefore must determine whether

---

[6] We note that "[c]ommentators generally look upon the intent of the promisee, if the promisee had any relevant intent, as governing whether a third party may enforce a contract as a donee beneficiary. Restatement (Second), Contracts, c. 6, Introductory Note and § 133 (Tent. Draft 1973); 2 Williston, Contracts (3d Ed.) § 356A, pp. 836, 839 n.19; 4 Corbin, Contracts § 776, p. 16.

"Williston has criticized *Colonial Discount Co.* v. *Avon Motors, Inc.*, 137 Conn. 196, 75 A.2d 507 (1950) and *Byram Lumber & Supply Co.* v. *Page*, 109 Conn. 256, 146 A. 293 (1929) for proposing as a universal test of third party rights the intent of the contracting parties to impose on the promisor a direct obligation to the third party. 2 Williston, [supra], pp. 838–39.

"Corbin views the ideas that lie behind such terms as 'purpose,' 'motive,' and 'intention' as obscure and elusive. 4 Corbin, [supra], § 776, pp. 14–15. The problem before the courts, he says, 'is to draw the line between those third persons whose benefit is so indirect and incidental that it is not sound policy to let them enforce the contract, and those other persons whose benefit is so direct and substantial and so closely connected with that of the promisee that it is economically desirable to let them enforce it. The law would profit greatly if the courts would concentrate upon this aspect of the problem and cease to state the questions merely in terms of the supposed "intent" of the parties.' 4 Corbin, [supra], § 786, p. 95." *Stowe* v. *Smith*, 184 Conn. 194, 196–97 n.1, 441 A.2d 81 (1981).

the city and the union intended that the city assume a direct obligation to Rapaport. "Although ordinarily the question of contractual intent presents a question of fact for the ultimate fact finder, where the language is clear and unambiguous it becomes a question of law for the court. . . . When the plain meaning and intent of the language is clear, a clause in a written lease cannot be enlarged by construction. There is no room for construction where the terms of a writing are plain and unambiguous, and it is to be given effect according to its language." (Citations omitted; internal quotation marks omitted.) Id., 232.

In this case, the relevant section of the collective bargaining agreement provides that, if a member of the union seeks outside legal representation due to a conflict of interest on behalf of the corporation counsel, "the City shall reimburse the [union] for all legal fees which are incurred in the defense of any such member of said [union]."[7] These terms plainly and unambiguously dictate that the parties to the agreement intended to create a direct obligation from the city to a member of the union, such as Reilly. These same terms, however, cannot be read as creating a direct obligation to the firm providing legal services to the union member. We conclude, as a matter of law, that the plain language of the collective bargaining agreement between the city and the union does not create a direct obligation from the city to Rapaport and that, accordingly, Rapaport was not intended to be a third party beneficiary of the agreement. Because Rapaport does not have the legal status of a third party beneficiary, the trial court properly dismissed the complaint as to Rapaport.

## II

The plaintiffs next claim that the trial court improperly concluded that Reilly failed to exhaust his contrac-

---

[7] See footnote 2.

tual remedies and, therefore, dismissed the complaint as to Reilly for lack of subject matter jurisdiction. We disagree.

" 'It is well settled under both federal and state law that, before resort to the courts is allowed, an employee must at least attempt to exhaust exclusive grievance and arbitration procedures, such as those contained in the collective bargaining agreement between the [city] and the [association]. *Vaca* v. *Sipes*, 386 U.S. 171, 184, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967); *Republic Steel Corporation* v. *Maddox*, 379 U.S. 650, 652, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965); *Hartford Principals' & Supervisors' Assn.* v. *Shedd*, 202 Conn. 492, 500, 522 A.2d 264 (1987); *School Administrators Assn.* v. *Dow*, [200 Conn. 376, 381–82, 511 A.2d 1012 (1986)].' *Daley* v. *Hartford*, [215 Conn. 14, 23, 574 A.2d 194, cert. denied, 498 U.S. 982, 111 S. Ct. 513, 112 L. Ed. 2d 525 (1990)]. Failure to exhaust the grievance procedures deprives the court of subject matter jurisdiction. Id.; *School Administrators Assn.* v. *Dow*, supra, 382." *Labbe* v. *Pension Commission*, 229 Conn. 801, 811, 643 A.2d 1268 (1994).

In this case, Reilly did resort to the grievance and arbitration procedure specified in § 22 of the collective bargaining agreement.[8] Previous to filing his complaint in the Superior Court, Reilly requested that the union submit a grievance on his behalf based on the city's failure to pay his legal bills. There is no dispute that after the city denied his grievance, Reilly failed to pursue further the remedies available under § 22. He now asserts that the dispute in question involves a nonarbitrable matter, that the question of legal fees does not fall under the provisions of § 22 in that it does not concern "wages, hours or conditions of employment." The trial court determined that § 22 was applicable to

---

[8] See footnote 3.

the dispute and that the plaintiffs had failed to avail themselves of the available remedies provided by that section.

" 'This court has long followed the rule that the arbitrability of a dispute is a legal question for the court unless the parties have clearly agreed to submit that question to arbitration.' " *Bridgeport* v. *Bridgeport Police Local 1159*, 183 Conn. 102, 104, 438 A.2d 1171 (1981), quoting *Board of Education* v. *Frey*, 174 Conn. 578, 580, 392 A.2d 466 (1978). Therefore, our review of the trial court's decision as to the applicability of § 22 is plenary.

In determining if a particular dispute is subject to the arbitration provisions of a contract, the judicial inquiry " ' "must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance. . . . An order to arbitrate the particular grievance should not be denied unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." ' " (Emphasis in original.) *John A. Errichetti Associates* v. *Boutin*, 183 Conn. 481, 488–89, 439 A.2d 416 (1981), quoting *Board of Education* v. *Frey*, supra, 174 Conn. 582.

Section 22 of the collective bargaining agreement details the mandatory grievance and arbitration procedure for when an employee is aggrieved "concerning his . . . wages, hours or conditions of employment . . . ." An association member's entitlement to reimbursement for outside legal representation under § 23 (A) constitutes a "condition of employment" as that term is used in § 22 (A). The term "conditions of employment" has been defined as encompassing "the entire spectrum of conditions and benefits which apply to public employment, in addition to the commonly under-

stood basic provisions relating to pay and hours of work, including but not limited to: seniority, grievance procedures, holiday and vacation pay, shift premiums, sick leave, jury duty, pensions and severance pay, insurance coverage of various kinds, seniority in promotions, transfers and layoffs, discipline and discharge and grievance arbitration provisions." (Internal quotation marks omitted.) *Board of Police Commissioners* v. *White*, 171 Conn. 553, 560, 370 A.2d 1070 (1976); see *Greater Bridgeport Transit District* v. *State Board of Labor Relations*, 232 Conn. 57, 63, 653 A.2d 151 (1995). It was a condition of Reilly's employment under the collective bargaining agreement that the city would pay his legal fees under certain circumstances. Disputes between the parties to the agreement with regard to that obligation were subject to the provisions of § 22. For this reason, the trial court correctly concluded that Reilly failed to exhaust his contractual remedies and that his complaint had to be dismissed for lack of subject matter jurisdiction.

The judgment is affirmed.[9]

In this opinion the other judges concurred.

[9] Because we conclude that the trial court properly dismissed the complaint as to both plaintiffs for lack of subject matter jurisdiction, we need not address the plaintiffs' remaining two claims.