[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT SORDONI/SKANSKA CONSTRUCTION COMPANY'S MOTION FOR SUMMARY JUDGMENT (#200)
The plaintiffs Norman and Reine Pelletier have filed a complaint[1]
for personal injury damages and loss of consortium allegedly resulting from an accident at work suffered by Mr. Pelletier on June 20, 1994, at a construction site located in Shelton, Connecticut, and generally referred to as the "Pitney Bowes project" (project)
The complaint alleges that the defendant Sordoni/Skanska Construction Company (Sordoni) was the general manager and/or construction manager of the project, and that the plaintiff's employer, Berlin Steel Construction Company (Berlin Steel), was a subcontractor on the project responsible for fabricating and installing the steel framework. The plaintiffs claim that Mr. Pelletier was injured during his employment with Berlin Steel as a result of being struck by a steel beam when a "seat connection" broke loose from a steel column.
The complaint is asserted in five counts: negligence as to Sordoni (first count); breach of contract as to Sordoni (second count); loss of consortium as to Sordoni (third count) negligence as to the defendant Professional Service Industries, Inc. (PSI) (fourth count); and loss of consortium as to the defendant PSI (fifth count). Sordoni has moved for summary judgment on the first, second and third counts[2] of the complaint, on the ground that Sordoni, as a general contractor, may not be held liable for the plaintiffs' injuries caused by the negligence of Mr. Pelletier's employer acting as Sordoni's subcontractor at the time of the incident in suit. The plaintiffs have opposed Sordoni's motion for summary judgment.
"[S]ummary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to CT Page 15309 judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted.)Appleton v. Board of Education, 254 Conn. 205, ___ A.2d ___ (2000). "A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings." (Citations omitted; internal quotation marks omitted.) MountaindaleCondominium Assn. v. Zappone, 59 Conn. App. 311, ___ A.2d ___ (2000). "In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski,206 Conn. 495, 500, 538 A.2d 1031 (1988).
The following undisputed facts are relevant to the disposition of this motion. Sordoni on May 31, 1994, entered into a contract with Berlin Steel for all structural steel for the project.[3] The subcontract incorporated certain engineering specifications, including specifications for structural steel, providing in pertinent part that:
2 . . 4 QUALITY CONTROL
 A. The material hereunder is for the purpose of contractor [Berlin Steel] knowing that inspection and testing will be done so that he can properly coordinate his work and properly prepare his bid. The inspections shall be performed by a qualified inspector under the provisions of a registered Connecticut Professional Engineer.
 B. Inspection and testing may be provided by the Owner's Independent Inspection and Testing Agency and is solely for the Owner's benefit. . . .
 * * * D. Inspection and acceptance, or failure to inspect, shall in no way relieve Contractor from his responsibility to furnish satisfactory material strictly in accordance with the Contract Documents.
Berlin Steel fabricated steel columns at its fabrication facility. The CT Page 15310 procedure for fabrication of steel columns at Berlin Steel involved measuring the steel, marking the locations where holes were to be drilled or connections were to be made, and then welding any connections, such as seat connections, that were to be made on the column. Following the welding, an inspector from Berlin Steel was supposed to inspect the final product, including all welds performed.
While employed by Berlin Steel, the plaintiff on June 1, 1994, attended a safety training course conducted by Sordoni, where he was provided a brochure entitled "Orientations Procedures for Subcontractor Personnel" (manual). The plaintiff signed the manual, indicating as follows:
 I, the undersigned, acknowledge receipt of the orientation procedures for subcontractor personnel. I have read and understand all the rules, regulations and procedures contained in this booklet. I also understand that compliance with these rules, regulations and procedures is a condition of my employment on this project.
On the day of the incident in suit, Berlin Steel was installing portions of the steel framework and the plaintiff was assisting with the installation. During this process, he was struck by a steel beam when a seat connection broke loose from a steel column. He is receiving worker's compensation benefits from his employer, Berlin Steel, for his injuries and lost income as a result of the accident.
The seat connection failed because it had been secured to the column by a single "tack weld," described as a small weld used to hold the piece in place pending a final weld. When the failed seat connection was welded to the column at Berlin Steel's fabrication facilities, it was never fully welded. A final weld was never performed.
The Berlin Steel quality control manager's job functions included inspection of welds performed at Berlin Steel. The quality control manager failed to inspect the column onto which the failed seat connection had been placed, and failed to inspect the weld of the failed seat connection.
The first count of the plaintiffs' complaint is based on negligence. "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation and actual injury." (Citation omitted; internal quotation marks omitted.) Maffucci v. RoyalPark Ltd. Partnership, 243 Conn. 552, 566, 707 A.2d 15 (1998). "The issue of whether [a] defendant owes a duty of care is an appropriate matter for summary judgment because the question is one of law." Pion v. SouthernCT Page 15311New England Telephone Co., 44 Conn. App. 657, 660, 691 A.2d 1107 (1997). "If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." (Citation omitted.) Maffucci v. Royal Park Ltd. Partnership, supra, 243 Conn. 567. Also see RK Constructors, Inc. v. Fusco Corp.,231 Conn. 381, 384-85, 650 A.2d 153 (1994).
In support of its motion for summary judgment, Sordoni relies on the premise that a general contractor cannot be held vicariously liable to an employee of a subcontractor who sustains injuries due to the employer/subcontractor's negligence, citing Ray v. Schneider,16 Conn. App. 660, 663, 548 A.2d 461, cert. denied, 209 Conn. 822,551 A.2d 757 (1988). The plaintiff in Ray v. Schneider was the employee of an independent contractor hired by owners/developers to excavate a trench and install sewer, water and gas utility pipelines for several buildings which were being added to an existing shopping center. The walls of the trench collapsed on the plaintiff, who sustained severe bodily injuries. The plaintiff sued the owners/developers under two theories: (1) vicarious liability for the independent contractor's failure to take necessary safety precautions, and (2) failure to exercise reasonable care in hiring the contractor. The trial court had rejected both of these theories of recovery, and that decision was affirmed on appeal.
The Ray court recognized the general rule that "an employer of an independent contractor, absent an act of negligence on his own part, is not liable to others for the negligent acts of the contractor. . . ." (Citation omitted.) Ray v. Schneider, supra, 16 Conn. App. 663. Exceptions to this rule arise when "the employer retains control of the premises or supervises the work of the contractor, or where the work to be performed by the contractor is inherently dangerous, or where the employer has a nondelegable duty to take safety precautions imposed by statute or regulation. . . ." (Citations omitted.) Id., 664. As articulated in the following quotation, the Ray court held that these "nonliability" exceptions exist for the benefit of the general public, not the employees of an independent contractor. Id., 667-68.
 Employees of an independent contractor stand on a different footing with respect to such injury than does the general public. An employee of an independent contractor who performs inherently dangerous work has specifically contracted to perform such work knowing the risks involved and receives generally higher compensation because of such risks . . . Furthermore, employees injured on the job, in contrast to passersby or other members of the general public CT Page 15312 who are relegated to the hazards of litigation . . . receive recovery as a matter of due course under a statutory/administrative scheme. Hence, the concern underlying the vicarious liability doctrine, namely, that an individual who is injured by the negligence of an independent contractor performing inherently dangerous work might not receive just compensation for his injury, is not applicable when the injured person is the employee of the independent contractor. These differences support the distinction made by the courts between members of the general public and employees of the independent contractor in the context of vicarious liability of the contractor's employer.
Id.
With respect to the plaintiff's claim based on negligent hiring, the Ray court held that for the same reasons as articulated above, "the. liability of the employer for physical harm to third persons under the negligent hiring doctrine does not apply where injuries are sustained by an employee of the contractor as opposed to the general public. . . ." (Citations omitted; internal quotation marks omitted.) Id., 672. Rather than claim negligent hiring and face the consequences of Ray directly, the plaintiff in this case alleges that Sordoni breached its duty to provide a safe workplace, first, by failing to perform a pre-erection inspection of the steel beam following its fabrication at Berlin Steel and prior to its installation, and second, by failing to inspect the fabricated steel framework erected on the project.
The undisputed facts indicate that the direct cause of the accident in this case was the combined failure of the plaintiff's employer, Berlin Steel, to provide the structural steel framework called for by the contract drawings and specifications, in addition to its failure to inspect its work in the manner required by the Sordoni-Berlin Steel subcontract. The welder and inspector responsible for the failed seat connection were both suspended from their jobs as a result of their failure to adequately weld and inspect the failed piece. The plaintiffs' claim against Sordoni is not substantially different from the vicarious liability or the negligent hiring claims rejected in Ray v. Schneider. It would be inconsistent with the holding in Ray v. Schneider to allow these plaintiffs to sue Sordoni under a theory that this general contractor failed to ensure the quality of its subcontractor's work, where that subcontractor is the employer of the plaintiff and is paying him workers compensation. Sordoni is entitled to summary judgment on the first count of the complaint. CT Page 15313
The plaintiffs contend that the contractual claim asserted in the second count of the complaint is derived from the general contract between Sordoni and Pitney Bowes, Inc. (the owner of the property), as well as the Pitney Bowes manual,[4] which together, according to the plaintiffs, evidence a clear intent on the part of Sordoni to assume a duty toward its subcontractors' employees.
The general contract obligates the general contractor to manage the construction; assume responsibility for safety measures; direct and monitor the work of subcontractors; review the adequacy of the subcontractors' personnel and equipment; require subcontractors to comply with applicable laws, rules and regulations; review and inspect the subcontractors' work on a regular basis; and implement safety programs. The contract does not include any language indicating that it is intended to benefit anyone other than the owner.
Nor is there any evidence that the plaintiff is an intended third-party beneficiary of the contract. "The proper test to determine whether a [contract] creates a third party beneficiary relationship is whether the parties to the [contract] intended to create a direct obligation from one party to the [contract] to the third party." (Brackets in original; citation omitted.) Rapaport and Benedict, P.C. v. Stamford,39 Conn. App. 492, 498, 664 A.2d 1193 (1995). "Where there is no ambiguity [in the language of the contract] . . . there is no occasion for construction [to determine intent] . . . and the agreement will be enforced as its terms direct. . . ." (Brackets in original; citation omitted.) Paul Revere Life Insurance Company v. Pastena, 52 Conn. App. 318,322, 725 A.2d 996 (1999). The interpretation of contract terms is a question of law for the trial court. Libero v. Lumbermans Mutual CasualtyCo., 143 Conn. 269, 270, 121 A.2d 622 (1956). There is no term in the owner's contract with Sordoni that creates a direct obligation between Sordoni and its subcontractors' employees.
The plaintiffs' contractual claim also relies on the force and effect of the manual, the provisions of which cannot be distinguished from the general obligation by all involved in the project to provide and maintain a safe workplace on the owner's property. The manual does not create an exception to the nonliability rule precluding the employees of a subcontractor from maintaining a direct action against the general contractor. See Ray v. Schneider, supra, 16 Conn. App. 663. Sordoni is entitled to summary judgment on the contract claim asserted in the second count of the complaint.
For the above reasons, summary judgment enters for the defendant Sordoni on the first and second counts of the complaint, as amended. Because the loss of consortium claim asserted by Reine Pelletier in the CT Page 15314 third count is merely derivative of her husband's claims, Schiano v.Bliss Exterminating Co., 57 Conn. App. 406, 414 n. 7, ___ A.2d ___ (2000), judgment also enters for Sordoni on the third count of the amended complaint.
Accordingly, Sordoni's motion for summary judgment (#200) is granted.
ROBERT F. McWEENY, J.