**Barry TOPF, Plaintiff,**

v.

**WARNACO, INC., Defendant.**

**Civil No. 3:95CV2257 (PCD).**

United States District Court,
D. Connecticut.

Aug. 22, 1996.

Stephen P. Horner, Stephen P. Horner & Associates, Westport, CT, for Plaintiff.

Toby M. Schaffer, Shapiro & Siegel, P.C., Stamford, CT, Stanley S. Arkin, Hyman L. Schaffer, Katherine E. Hargrove, Arkin, Schaffer & Kaplan, New York City, for Defendant.

### RULING ON MOTION TO STAY THE ACTION AND COMPEL ARBITRATION AND MOTION FOR JURY TRIAL

DORSEY, Chief Judge.

Defendant moves to stay the action and compel arbitration pursuant to 9 U.S.C. §§ 3 and 4 of the Federal Arbitration Act (FAA). Plaintiff cross-moves for a jury trial on the issue of whether an arbitration agreement exists between the parties. For the reasons stated below, plaintiff's motion is denied and defendant's motion is granted.

### I. FACTS

Warnaco is a manufacturer of men's and women's apparel. In August 1991, defendant offered employment to plaintiff as Vice President of Operations in Warnaco's Warner's division. On August 16, 1991, under the phrase "Accepted to and agreed to," plaintiff signed the offer letter, which provided in part: "This letter will confirm the key terms of our offer of employment to you. General terms of employment are stated in the Warnaco Job Application and Current Employee Handbook." (Silverstein Aff.Ex. A.)

On his first day of work, September 23, 1991, plaintiff received the referenced employee handbook ("handbook"). Under the heading "Arbitration of employment disputes," the handbook provides that "[a]ny controversy arising out of the employment relationship shall, on the request of either party, at any time following the termination of employment, be submitted to final and binding arbitration...." (Handbook at 23.)

Plaintiff signed the "Acknowledgement of Receipt of the Warnaco Employee Handbook," which provides in relevant part:

I [ ] understand that this Handbook is not and was not intended to serve as a contract between Warnaco and myself regarding the nature or duration of my employment with Warnaco, except that this Handbook is our entire agreement concerning each party's right to arbitrate employment disputes and to terminate the employment relationship with or without cause at any time, and that no one at Warnaco is authorized to make an exception to this understanding, except an officer of Warnaco who does so in writing.

(Handbook at 24.) Plaintiff was terminated on May 25, 1994.

Plaintiff filed this suit, alleging violations of the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq., the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 et seq., the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., and the Connecticut Fair Employment Practices Act (FEPA), CONN.GEN.STAT. § 46a–60 et seq., as well as several state law claims.

## II. DISCUSSION

### A. Standards of Review

■ The FAA, 9 U.S.C. §§ 1–14, reflects a "liberal federal policy favoring arbitration agreements" as a means of settling disputes. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991); *In re Salomon, Inc. Shareholders Derivative Litig.*, 68 F.3d 554, 557 (2d Cir.1995). This policy is reflected in the provision that any agreement to arbitrate in contracts affecting commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law ... for the revocation of any contract." 9 U.S.C. § 2.[1]

Parties may petition the federal courts to enforce agreements to arbitrate: "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement ... may [seek] an order directing that such arbitration proceed ..." 9 U.S.C. § 4. If the court finds the issue arbitrable, it must "stay the trial of the action until ... arbitration has been [made] in accordance with the terms of the agreement." 9 U.S.C. § 3. However, if "the making of the arbitration agreement be in issue, the court shall proceed ... to the trial thereof." 9 U.S.C. § 4.

■ Four issues must be considered when determining whether to stay proceedings and compel arbitration. First, whether the parties have made an agreement to arbitrate; second, the scope of the agreement; third, if federal statutory claims are involved, whether they are non-arbitrable; and fourth, whether to separate any arbitrable claims from those which are non-arbitrable. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir.1987). *See Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 45 (2d Cir.1993).

■ If an arbitration agreement is found to exist, the action must be stayed and arbitration compelled on all issues which the agreement covers. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct.

---

1. In plaintiff's memorandum in opposition to defendant's motion to stay action and compel arbitration, plaintiff asserts that his employment contract with defendant is not covered by the FAA. Plaintiff claims that FAA does not apply to the agreement because the FAA does not apply to the "contracts of employment of seamen, railroad employees, *or any other class of workers engaged in foreign or interstate commerce.*" 9 U.S.C. § 1 (emphasis added). Although the Supreme Court expressed differing opinions about the scope of this exclusion clause in *Gilmer·v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the issue was not actually decided. 500 U.S. at 25 n. 2, 111 S.Ct. at 1651 n. 2.

The Second Circuit has consistently viewed the exclusion clause in § 1 narrowly, holding it applies "only to those actually in the transportation industry." *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir.1972). *See also Signal–Stat Corp. v. Local 475*, 235 F.2d 298 (2d Cir.1956), *cert. denied*, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957); *Maye v. Smith Barney Inc.*, 897 F.Supp. 100, 105 (S.D.N.Y.), *leave to appeal denied*, 903 F.Supp. 570 (S.D.N.Y. 1995). Following the law of the Second Circuit in the absence of contrary Supreme Court authority, plaintiff's contract is governed by the FAA.

1238, 1241, 84 L.Ed.2d 158 (1985). *See also McMahan Sec. Co., L.P. v. Forum Capital Mkt, L.P.*, 35 F.3d 82, 86 (2d Cir.1994); *Genesco*, 815 F.2d at 844.

### B. Validity of Arbitration Agreement

■ In determining the existence of an arbitration agreement, "ordinary principles of contract law" are to be used. *Russolillo v. Thomson McKinnon Sec., Inc.*, 694 F.Supp. 1042, 1044 (D.Conn.1988). The law of the state which governs the contract, in this case, Connecticut, is applied. *See First Options of Chicago, Inc. v. Kaplan*, —— U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

■ A party moving for a jury trial under § 4 must show the existence of a genuine issue involving the making of the arbitration agreement. *Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir.1945). *See also Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir.1987); *In re Matter of Arbitration between Interbras Cayman Co. v. Orient Victory Shipping Co.*, 663 F.2d 4, 7 (2d Cir.1981). There are two requirements necessary to show the existence of such a genuine issue: first, the party must make an unequivocal denial that an arbitration agreement exists; and second, the party must show sufficient facts in support of their contention. *Almacenes Fernandez*, 148 F.2d at 628. *See also Manning*, 833 F.2d at 1103 ("party ... must submit sufficient evidentiary facts in support of ... claim ... to precipitate trial contemplated by 9 U.S.C. § 4."); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1196 (7th Cir.1987) (party can only obtain a jury trial if "there is a triable issue concerning the existence ... of the agreement.").

■ What constitutes "sufficient facts" has not been clearly defined in the Second Circuit. Some cases have suggested that the mere showing of any factual issue between the parties is enough to warrant a jury trial. *See, e.g. Manning*, 833 F.2d at 1103; *See also, e.g., Interbras Cayman Co.*, 663 F.2d at 7; *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 411 (2d Cir.1959), *cert. granted*, 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). However, recent cases suggest that the factual issue shown must sustain a burden like that imposed in summary judgment. *See, e.g. Doctor's Assoc., Inc. v. Stuart*, 85 F.3d 975, 980 (2d Cir.1996) (noting party's failure to show facts sufficient as a matter of law). *See also, e.g., Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir.1995) (comparing FED.R.CIV.P. 56(c), (e) to level of sufficient evidentiary facts needed for jury trial by 9 U.S.C. § 4). By this standard, the movant under § 4 would have to provide sufficient evidence in support of their claims such that a reasonable jury could return a verdict for them under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Decisions in other circuits involving jury trial motions under 9 U.S.C. § 4 support the "summary judgment" standard. The Fifth Circuit, noting that its caselaw "[had] not established the precise showing a party must make" in motioning for a jury trial under § 4, stated that the movant must make some showing "that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved true." *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). *See also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co. Ltd.*, 636 F.2d 51, 54, n. 9 (3d Cir.1980) (stating that when considering an argument about the existence of an agreement to arbitrate, the standard used is the same as in summary judgment); *Saturday Evening Post Co.*, 816 F.2d at 1196 (examining request for a jury trial by § 4, the court stated that if the dispute "involves ... only legal questions, a jury trial would be pointless because [it] ... could not affect the judge's decision on whether to order arbitration.").

In addition, the policy behind the FAA suggests that the "summary judgment" standard should be applied. If parties could request and receive jury trials merely by showing evidence of *any* factual dispute about the existence of arbitration agreements, then this "would frustrate the very policies ... [that the FAA is] meant to promote"—the alternative resolution of disputes

outside of the judicial forum. *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 288 (9th Cir.1988). *See Moses H. Cone Memorial Hosp.*, 460 U.S. at 24, 103 S.Ct. at 941.

Accordingly, the "summary judgment" standard will be applied to the motion for jury trial. Thus, plaintiff must show genuine factual issues regarding his allegations concerning the making of the arbitration agreement, such that a jury could find no agreement.

Plaintiff satisfies the first prong of the test. He unequivocally denies the existence of an arbitration agreement.

As to the second prong, plaintiff claims that there was no agreement about the meaning or existence of the arbitration term.[2] This argument is based upon two grounds: one, that the language of the arbitration clause is ambiguous; and two, that he was fraudulently induced into making the agreement. However, plaintiff fails to provide sufficient evidence as to these allegations.

### 1. Ambiguity

Plaintiff claims that the provisions concerning arbitration in the acknowledgment form are ambiguous. A contract is interpreted by the intent of the parties expressed in the language of the agreement. *Barnard v. Barnard*, 214 Conn. 99, 110, 570 A.2d 690, 696 (1990). In the fact of ambiguity, the court must defer to a jury to determine the intent of the parties. However, when the language of a contract is clear and unambiguous, interpretation is a matter of law for the court to decide. *Rapaport & Benedict, P.C. v. Stamford*, 39 Conn.App. 492, 497–98, 664 A.2d 1193, 1197 (1995); *See Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 970 F.2d 1138, 1147–48 (2d Cir.1992), *cert. granted*, 507 U.S. 983, 113 S.Ct. 1576, 123 L.Ed.2d 145, *and cert. denied*, 507 U.S. 986, 113 S.Ct. 1585, 123 L.Ed.2d 151 (1993). When the terms of an agreement are clear, "there is no room for construction" of the language. *Levine v. Massey*, 232 Conn. 272, 277–78, 654 A.2d 737, 740 (1995).

In this case, the language of the offer letter incorporates the handbook. The acknowledgement clearly states that the handbook is not a contract *except* with regards to "each party's right to arbitrate employment disputes ..." (Handbook at 24.) These provisions are not in contradiction, as claimed. Instead, "read[ing] the contract as a whole," the acknowledgment explicitly limits the scope of the handbook as part of the overall contract to two provisions regarding arbitration and employment-at-will status. *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d at 452.[3]

Ambiguity must arise from the language itself, not subjective interpretations of the parties. *Levine*, 232 Conn. at 278, 654 A.2d at 740. Considering all relevant surrounding circumstances, including plaintiff's allegations of fraudulent conduct, these facts cannot "prove an intent contrary to the plain meaning of the language used." *Connecticut Co. v. Div. 425*, 147 Conn. 608, 617, 164 A.2d 413, 417 (1960). *See Levine*, 232 Conn. at 278, 654 A.2d 737.

---

**2.** Although not reiterated in support of his motion for jury trial, plaintiff also claims in his opposition to the motion to compel arbitration that the arbitration provision in the handbook lacked consideration and is invalid. Plaintiff maintains that the consideration for the original agreement could not apply to the handbook which was signed after the original agreement. However, this argument is without merit. The original contract signed by plaintiff on August 16, 1991, incorporated the handbook, and the consideration for that document, namely plaintiff's employment, is also valid for the handbook and the arbitration clause contained within. *See Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 451–52 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1352, 134 L.Ed.2d 520 (1996).

However, even if the arbitration clause were considered separately, the arbitration provision is supported by valid consideration. Mutual promises to arbitrate are sufficient to support an arbitration agreement. *See Robert Lawrence Co.*, 271 F.2d at 411.

**3.** Plaintiff asserts in his opposition to the motion to stay and compel arbitration that the acknowledgment was an invalid disclaimer. He contends that since the disclaimer is invalid, the arbitration agreement must be invalid as well because there is no severability clause. Plaintiff provides no support for this conclusion. If the disclaimer was invalid, then all the terms of the handbook would be incorporated in the employment contract, including the arbitration provision.

There is nothing in the record or the law which warrants a finding of ambiguity in the terms of the agreement to arbitrate. Plaintiff has not shown sufficient facts creating a triable issue on his allegation of ambiguity.

### 2. Fraudulent Inducement

Plaintiff also alleges that his agreement to arbitrate was fraudulently induced by defendant. Plaintiff asserts both an affirmative misrepresentation of a material fact and the omission of a material fact along with a duty of disclosure.

### a. Misrepresentation

Plaintiff claims that statements made by defendant led plaintiff to sign the agreement to arbitrate without his knowledge as to its true contents.

■■■■ To show a claim for fraudulent inducement based upon misrepresentations, one must demonstrate 1) that a false representation was made as a statement of fact; 2) that it was known to be false; 3) that it was made to induce action by the other party; and 4) that the party acted on the statement to their detriment. *Miller v. Appleby*, 183 Conn. 51, 54–55, 438 A.2d 811, 813 (1981); *See also Billington v. Billington*, 220 Conn. 212, 217, 595 A.2d 1377, 1379 (1991). A party's reliance upon another's misrepresentation must be justifiable or reasonable. *Amatulli v. People's Bank*, 917 F.Supp. 895, 906 (D.Conn.1996). *See also Maturo v. Gerard*, 196 Conn. 584, 589, 494 A.2d 1199 (1985).

■■■ Plaintiff asserts that in signing the offer letter, he relied on the statement that all "key" terms were contained therein, and that "general" terms were contained in the handbook.

Plaintiff received the handbook when he began work. Allegedly, he was told he had to sign the acknowledgment form in order to receive the handbook. He claims that this statement, in conjunction with the representation in the offer letter, fraudulently induced him to overlook the mention of the arbitration agreement contained in the acknowledgment.

Accepting all of plaintiff's allegations as true, and drawing all reasonable inferences in plaintiff's favor, he fails to make a sufficient showing of a triable issue of misrepresentation. Plaintiff fails to show that his reliance upon the alleged misrepresentation was reasonable. *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282 (9th Cir.1988) is persuasive on this issue. In *Cohen*, plaintiffs signed a margin agreement with defendant for a loan for the purchase of securities. The agreement contained an arbitration clause. Similar to the instant case, plaintiffs claimed that defendant fraudulently induced them into the arbitration agreement based upon alleged misrepresentations and non-disclosure of the term. Plaintiffs claimed reliance on a statement by the defendant's agent that the agreement they were signing "did not compromise their rights." *Cohen*, 841 F.2d at 286.

The *Cohen* court noted that "a misrepresentation renders a contract voidable only if … the plaintiff reasonably relied on that misrepresentation in entering the contract." *Id.* at 287. "Whether the [plaintiffs] read the agreement but did not notice the arbitration clause, or chose not to read the agreement at all, their reliance on [defendant's] alleged misrepresentation was unreasonable in light of the clear and explicit language of the contract." *Id.* at 288.

Likewise, in the present case, plaintiff fails to show that his reliance on a purported misrepresentation was reasonable. Plaintiff is an experienced business man. It is not reasonable to assume that the reference to "general" terms of employment does not refer to an arbitration agreement. The "key" provisions in the offer letter clearly referred to terms specific to plaintiff. The arbitration provision, applicable to all employees, could only reasonably be regarded as a "general" term.

Even if defendant's representative told plaintiff that he had to sign the acknowledgment prior to his receipt of the handbook, this statement does not in any way misrepresent that the plaintiff was signing an agreement to arbitrate. The arbitration provision was clearly stated in the handbook and the acknowledgment. Contrary to plaintiff's con-

tentions, this clause is not buried in misleading language in the acknowledgment, but rather is explicitly stated in clear language in one of three paragraphs on the page that the handbook represents "the entire agreement concerning each party's right to arbitrate employment disputes." (Handbook at 24.) The acknowledgment also states, just above plaintiff's signature, that if the employee has any questions about policies contained in the handbook, he or she is to ask about them. (Handbook at 24.) Plaintiff does not claim that he asked to have these provisions explained, and it was not reasonable for a man of any business experience not to do so, if as he now claims that the language was misleading.

Under all the circumstances, it was unreasonable, as a matter of law, for plaintiff to have relied on defendant's alleged misrepresentations. *See Doctor's Assoc., Inc. v. Stuart*, 85 F.3d at 980.

#### b. Non-disclosure

Plaintiff also claims that he was never informed that the handbook contained an arbitration agreement, and that he was never told that his legal remedies were limited by the arbitration clause. He contends that this non-disclosure fraudulently induced him into the arbitration agreement.

■ A claim for fraudulent non-disclosure requires 1) failure to disclose a fact; 2) the duty to disclose that fact; 3) intent to induce reliance; 4) the reliance upon the non-disclosure was reasonable. *Duksa v. City of Middletown*, 173 Conn. 124, 127, 376 A.2d 1099, 1101 (1977). *See Petrone v. Melnick*, No. CV89 0042882S, 1994 WL 228252, at *1 (Conn.Super. May 19, 1994).

■ Accepting all plaintiff's allegations as true, and drawing all reasonable inferences in his favor, plaintiff has not produced sufficient evidence to support a claim for non-disclosure. Plaintiff has not demonstrated that defendant was under a duty to disclose anything about the contract. Again, *Cohen, supra,* is persuasive on this issue. The court noted that "[it] knew of no case holding that parties dealing at arms-length have a duty to explain to each other the terms of a written

contract." 841 F.2d at 287. In the absence of showing of any duty, non-disclosure is not actionable by law.

The parties dealt at arms-length in the making of this agreement. Plaintiff has produced nothing to support his contention that he was not dealing at arms-length with defendant when making his agreement. Although plaintiff claims that he was in a weaker economic position when he signed the contract, plaintiff has not shown defendant had any duty to disclose the arbitration clause, above and beyond the explicit written disclosure of the arbitration agreement in the handbook and the acknowledgment.

In addition, plaintiff does not show that his reliance on defendant's allegedly insufficient disclosure of the arbitration clause was reasonable. The offer letter specifically stated that general terms of employment were included in the handbook. The handbook clearly spelled out the arbitration provision and the acknowledgment references plaintiff to the arbitration provision as part of his contract.

Accordingly, plaintiff's claim of fraudulent inducement based upon alleged misrepresentations and non-disclosure fail. Under Connecticut law, a contract exists as a matter of law, and plaintiff's motion for a jury trial is denied.

#### C. Scope of the Arbitration Agreement

■ Next, the scope of the arbitration agreement, and whether it covers plaintiff's claims must be considered. Federal policy favors arbitration of disputes. *Gilmer*, 500 U.S. at 26, 111 S.Ct. at 1652; *Moses H. Cone Memorial Hosp.*, 460 U.S. at 24–25, 103 S.Ct. at 941–942. *See also Genesco*, 815 F.2d at 847. As a result, courts read arbitration clauses broadly, with "any doubts concerning the scope of arbitrable issues [being] resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25, 103 S.Ct. at 941. *See also Mastrobuono v. Shearson Lehman Hutton, Inc.,* —— U.S. ——, ——, 115 S.Ct. 1212, 1218, 131 L.Ed.2d 76 (1995).

■ The clause at issue states that "[a]ny controversy arising out of the employment relationship shall ... at any time following

the termination of employment, be submitted to ... arbitration" (Handbook at 23.) Reading the language in light of the policy favoring arbitration, this agreement clearly covers all possible disputes alleged by plaintiff regarding his termination.

The Second Circuit has reached the same conclusion for a clause of this nature. *See Collins & Aikman Prod. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir.1995) ("the clause in this case ... 'any claim or controversy arising out of or relating to the agreement,' is the paradigm of a broad clause.").

### D. Arbitrability of Federal Statutory Claims

Whether plaintiff's federal statutory claims are arbitrable must next be considered. Plaintiff asserts several federal claims in his complaint, including violations of the Rehabilitation Act of 1973, the ADA, and the ADEA.

█ There is no *"per se* presumption against arbitration of statutory claims." *Genesco*, 815 F.2d at 848. The "duty to enforce [arbitration] is not diminished when a party ... raises a claim founded on statutory rights." *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987). Therefore, unless Congress has "evinced an intention to preclude waiver of judicial remedies for the statutory rights at issue," those claims will be submitted to arbitration by the court. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354–55, 87 L.Ed.2d 444 (1985).

█ In order to overcome the strong federal policy in favor of arbitration, the burden rests on "the party opposing arbitration [to] show that Congress reserved a federal forum" for claims under a particular statute. *Genesco*, 815 F.2d at 849. Plaintiff fails to produce any evidence as to the non-arbitrability of any of his federal claims.

Plaintiff asserts that a party cannot waive statutory remedies for employment discrimination claims unless it is done knowingly and voluntarily. He claims that he did not knowingly agree to arbitrate his discrimination claims, because the agreement did not put him on notice that he was waiving his rights

to judicial remedies under the statutes. Plaintiff relies on *Hoffman v. Aaron Kamhi, Inc.*, 927 F.Supp. 640 (S.D.N.Y.1996), and *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1304 (9th Cir.1994), *cert. denied*, — U.S. ——, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995). These cases, however, are unpersuasive.

In *Hoffman*, the court considered the arbitrability of the plaintiff's ADA discrimination claims. The court found that the claims were not arbitrable because plaintiff had not been on notice that he was waiving his right to bring employment discrimination claims in federal court. *Hoffman*, 927 F.Supp. at 643–45. The court based its decision on the fact that the arbitration agreement at issue was ambiguously worded because it did not refer to employment or termination disputes. *Hoffman*, 927 F.Supp. at 645. In addition, the court pointed out that the ADA had not been in existence at the time the agreement was reached, thereby precluding any ability of the parties to agree to arbitrate such disputes. *Id.*

*Hoffman* is distinguishable on both legal and factual grounds. As noted in *Hoffman*, claims based on a statutory right are arbitrable, if, indeed, there is a valid agreement to arbitrate. *Hoffman*, 927 F.Supp. at 642. Thus, *Hoffman* must be limited to its facts in light of case law holding that statutory claims for employment discrimination are arbitrable. *See Gilmer*, 500 U.S. at 35, 111 S.Ct. at 1656–57 (ADEA); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1487 (10th Cir.1994) (pregnancy discrimination); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir.1991) (Title VII claims); *Bender v. A.G. Edwards*, 971 F.2d 698, 700 (11th Cir.1992) (sexual harassment); *Mago v. Shearson Lehman Hutton, Inc.*, 956 F.2d 932, 934 (9th Cir.1992) (gender discrimination); *Willis v. Dean Witter Reynolds, Inc.*, 948 F.2d 305, 307–10 (6th Cir.1991) (gender discrimination). The district courts of this circuit have reached the same conclusion. *See Maye v. Smith Barney, Inc.*, 897 F.Supp. at 109 (race discrimination); *Gateson v. ASLK–Bank, N.V.*, No. 94 Civ. 5849, 1995 WL 387720, at *2 (S.D.N.Y. June 29, 1995) (gender discrimination); *Pitter v. Pru-*

dential Life Ins. Co. of Am., 906 F.Supp. 130, 139 (E.D.N.Y.1995) (race discrimination).

In addition, the facts in the *Hoffman* decision are distinguishable from the present case. In the instant case, unlike in *Hoffman*, the arbitration agreement explicitly refers to "any controversy arising out of the employment relationship" as being arbitrable. In addition, each of the statutes upon which plaintiff bases his claim were in effect in 1991 when he signed the agreement. Therefore, comparison to *Hoffman* is unavailing.

Plaintiff's reliance on *Lai* is also misplaced. In *Lai*, the court determined that plaintiff's employment discrimination claims were not arbitrable. However, the issue in that case was not whether a plaintiff can agree to arbitrate statutory claims, as the court noted that parties can do so in light of *Gilmer. Lai*, 42 F.3d at 1303. Rather, the plaintiffs claimed that they did not knowingly agree to submit their claims to arbitration because the arbitration clause did not describe the types of disputes subject to arbitration. *Id.* at 1305. The present case is distinguishable because it refers specifically to the arbitrability of any controversy arising out of an employment relationship. Other courts have distinguished *Lai* similarly, in addition to noting that *Lai* is flawed in light of *Gilmer* and federal policies favoring arbitration. *See Golenia v. Bob Baker Toyota*, 915 F.Supp. 201, 205 (S.D.Cal.1996); *Maye*, 897 F.Supp. at 107. Thus, plaintiff's arguments are unavailing.

■ Plaintiff's statutory claims under the ADEA, ADA, and the Rehabilitation Act are arbitrable. ADEA claims arbitrable. *See, e.g., Gilmer*, supra. Several courts have also

found ADA claims arbitrable. *See, e.g., Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875, 881 (4th Cir.1996); *Golenia v. Bob Baker Toyota*, 915 F.Supp. 201, 204–05 (S.D.Cal.1996); *Collins v. Blue Cross Blue Shield of Michigan*, 916 F.Supp. 638, 642 (E.D.Mich.1995). Both the text and the legislative history of the ADA encourage the use of alternative means of settling disputes. "Where appropriate and to the extent authorized by law, the use of alternative dispute resolution, including ... arbitration, is encouraged to resolve disputes." 42 U.S.C. § 12212; *see Golenia*, 915 F.Supp. at 205. Given the federal policy favoring arbitration, and the text of the statute a clear expression of congressional intent, plaintiff's ADA claim is arbitrable.

As to plaintiff's Rehabilitation Act claims, plaintiff has produced no evidence that Congress intended to reserve a federal forum for Rehabilitation Act claims.[4] Examining the Rehabilitation Act itself suggests that such claims are arbitrable. In 29 U.S.C. § 794a, the remedies, procedures, and rights under the Rehabilitation Act are provided to be the same as those in Title VII actions, particularly 42 U.S.C. §§ 2000d and 2000e–5. In light of the similarities between the Rehabilitation Act and the ADEA, ADA, and Title VII, all of which have been found to be arbitrable, the liberal federal policy toward arbitration under the FAA, and the rejection in *Gilmer* of any broad public policy arguments against submitting such claims to arbitration, plaintiff's Rehabilitation Act claims are arbitrable.

### E. State Law Claims

■ Plaintiff also alleges several state law claims, including a claim under CONN.

4. Plaintiff asserts that *Bates v. Long Island R. Co.*, 997 F.2d 1028 (2d Cir.1993), *cert. denied*, 510 U.S. 992, 114 S.Ct. 550, 126 L.Ed.2d 452 (1993), supports his assertion that arbitration should not be the sole forum for the resolution of plaintiff's civil rights claims. In *Bates*, the Second Circuit held that prior arbitration compelled by a collective-bargaining agreement did not bar plaintiff's claims under the Rehabilitation Act in federal district court. *Id.* at 1035. In so holding, the court relied on *Alexander v. Gardner–Denver*, 415 U.S. 36, 53–54, 94 S.Ct. 1011, 1022–1023, 39 L.Ed.2d 147 (1974), and *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). In *Gilmer*, the

Supreme Court distinguished this line of cases for three reasons. Firstly, the cases did not involve enforceability of an agreement to arbitrate statutory claims, but rather whether arbitration of contract-based claims precluded a judicial trial on statutory claims. *Id.* 500 U.S. at 35, 111 S.Ct. at 1656–57. Secondly, the cases addressed the tensions between collective-bargaining representation and individual statutory rights. *Id.* Thirdly, the cases did not involve the liberal federal policy toward arbitration under the FAA. *Id.* Therefore, *Bates* is not persuasive on the issue of individual agreements to arbitrate discrimination claims.

Gen.Stat. § 46a–60, et seq. These state law claims arose from plaintiff's employment and thus are covered by the broad scope of the arbitration clause. Conn.Gen.Stat. § 46a–85 provides that "[t]he submission of a claim to the arbitration process shall not bar a person from filing a complaint under this chapter." To the extent that this may be interpreted to preclude arbitration, the Supreme Court has held that Congressional intent behind the FAA pre-empts state laws which contradict or limit the provisions of the FAA favoring arbitration agreements. *Southland Corp. v. Keating,* 465 U.S. 1, 7, 104 S.Ct. 852, 856–57, 79 L.Ed.2d 1 (1984).

Consequently, plaintiff's state law claims are arbitrable.

### III. CONCLUSION

Accordingly, the court finds a valid arbitration agreement covering each of plaintiff's claims. Therefore, plaintiff's motion for jury trial (doc. 11) is denied. Defendant's motions to stay the proceedings (doc. 14–1) and compel arbitration (doc. 14–2) are granted.

SO ORDERED.