**Santiago MORALES, Petitioner**

v.

**RENT–A–CENTER, INC., Respondent**

**No. 3:03–CV–1319 (EBB).**

United States District Court,
D. Connecticut.

Nov. 3, 2003.

Christopher N. Parlato, Bethlehem, CT, Joseph Mulshine, Law Office of Joseph Mulshine, Avon, CT, for Plaintiff.

David S. Warner, Littler Mendelson, New York, NY, Andrea A. Hewitt, John M. Wolfson, Scott J. Wenner, Feiner Wolfson, Hartford, CT, for Defendant.

## RULING ON PLAINTIFF'S MOTION TO COMPEL ARBITRATION

ELLEN BREE BURNS, District Judge.

### Introduction

Plaintiff Santiago Morales (hereinafter "Plaintiff" or "Morales") brings this action against his employer, Rent–A–Center (hereinafter "Defendant" or "RAC"), alleging unlawful employment discrimination based on his race, national origin, and sexual orientation. Defendant has moved to stay the judicial proceedings and compel arbitration pursuant to the Federal Arbitration Act (FAA). Plaintiff cross moved pursuant to Section Four of the FAA, de-

manding a jury trial on any triable issues concerning the making of the arbitration agreement.

### STATEMENT OF RELEVANT FACTS

Plaintiff was employed as an assistant manager for Rentown, LLC, at 566 West Main Street, Meriden Connecticut, which is owned and managed by Rent–A–Center, Inc. (RAC). On July 3, 2002, Plaintiff signed a "Mutual Agreement to Arbitrate Claims" (hereinafter "arbitration agreement") in the presence of the manager of the Meriden RAC store, Dan White. Plaintiff contends that he was informed that, if he did not sign the arbitration agreement, he would lose his job. In response, Mr. White asserts that, during their meeting, the Plaintiff did not convey any misgivings about signing the agreement, did not request additional time to consider the agreement, and did not ask to consult with an attorney.

The arbitration agreement contains the following relevant terms:

The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present, or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise...

The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to...claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation...);

and claims for violation of any federal, state, or governmental law, statute, regulation, or ordinance...

Except as otherwise provided in this agreement, both the company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission, or a similar fair practices agency...) in any way related to any claim covered by this agreement.

The Agreement also contains an acknowledgment provision that states:

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT; THAT I UNDERSTAND ITS TERMS; THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THIS AGREEMENT ARE CONTAINED IN IT; AND THAT I HAVE ENTERED INTO THE AGREEMENT AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF. I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL. I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

Mutual Agreement to Arbitrate Claims, July 03, 2002

Plaintiff alleges that, soon after he signed the agreement, a new supervisor at RAC, Phil Mele, began to discriminate

against him on the basis of his race, national origin and sexual orientation. Plaintiff is an openly gay Hispanic male. Plaintiff contends that, on or about September 17, 2002, Mr. Mele confronted Plaintiff and said to him "I heard about you," ostensibly referring to his race, national origin and sexual orientation. Subsequently, Plaintiff claims he was subjected to verbal abuse regarding his sexuality, spoken to in a "rude" and "brutal" manner, was disallowed breaks as mandated by law, and was expected to complete new and more difficult job functions. Plaintiff eventually resigned, which he attributes to the nature and severity of the discrimination he was subject to at work.

On October 25, 2002, Plaintiff filed a charge of discrimination against RAC with the Connecticut Commission on Human Rights and Opportunities (hereinafter "CHRO"). On June 5, 2003, the CHRO issued a right to sue letter to Plaintiff. Thereafter, on or about June 26, 2003, Plaintiff filed this lawsuit against RAC, asserting multiple discrimination claims pursuant to Conn. Gen.Stat. §§ 46a—81(c)(1) (2001), the Connecticut Fair Employment Practices Act, as well as a negligence claim. Defendant has now moved to compel Romero to arbitrate his grievances, and Plaintiff seeks a jury trial on whether an enforceable contract was formed.

### Legal Analyses

#### I. Standard

■ The Federal Arbitration Act (the "FAA") creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Oldroyd v. Elmira Savings Bank, FSB,* 134 F.3d 72, 76 (2d Cir.1998) (*citing Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). Arbitration agreements affecting interstate commerce are subject to the FAA. *Id.*

Neither party disputes the applicability of the FAA to the arbitration agreement at issue in this case. The FAA provides, in pertinent part, that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 USCS § 2 (2003)

The Second Circuit instructs us that "[a]ny analysis of a party's challenge to the enforcement of an arbitration agreement must begin by recognizing the FAA's strong policy in favor of rigorously enforcing arbitration agreements." *Doctor's Assocs. v. Hamilton,* 150 F.3d 157, 162–63 (2d Cir.1998) (citing *Perry v. Thomas,* 482 U.S. 483, 490, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987)). *See also Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (observing "the preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered.").

■ In determining whether to compel arbitration pursuant to the FAA, the court looks to four factors: 1) whether the parties agreed to arbitrate their dispute; 2) whether the asserted claims fall within the scope of the arbitration agreement; 3) whether Congress intended the federal statutory claims asserted by the plaintiff, if any, to be non-arbitrable, and 4) if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the remaining claims pending arbitration. *Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 844 (2d Cir.1987); *Topf v. Warnaco, Inc.,* 942 F.Supp. 762, 762 (D.Conn.1996).

Section Three of the FAA provides for a stay of proceedings where the court is satisfied that the issue before it is arbitra-

ble under the agreement. Under Section Four, the FAA instructs federal courts to compel arbitration if "there has been a 'failure, neglect, or refusal' of any party to honor an agreement to arbitrate." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (quoting 9 U.S.C § 3). The Supreme Court has declared that "by its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc.*, 470 U.S. at 218, 105 S.Ct. 1238 (1985).

■ However, Section Four of the FAA also instructs that a court may be required to proceed to trial "when parties disagree about whether they entered into an arbitration agreement subject to the FAA." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 145 (2d Cir.2001); quoting 9 U.S.C. § 4. Courts have interpreted Section Four as mandating that, "before a party can be required to submit to arbitration, it is entitled to a judicial determination of the threshold question of whether it entered into an agreement which obliges it to consent to arbitration." *PMC, Inc. v. Atomergic Chemetals Corp.*, 844 F.Supp. 177, 181 (S.D.N.Y.1994). Hence, a summary judgment standard is applied to a motion for jury trial, requiring the plaintiff to show a genuine issue of material fact regarding the making or scope of the agreement, such that a jury could find no agreement. *Bensadoun v. Jobe–Riat*, 316 F.3d 171, 175 (2d. Cir.2003); *Stamford Holding Co. v. Clark*, No. 3:02CV1236, 2003 WL 1597206, 2003 U.S. Dist. LEXIS 4542 (D.Conn. 2003). *See also Almacenes Fernandez, S.A. v. Golodetz*, 148 F.2d 625, 628 (2d Cir.1945) ("To make a genuine issue entitling the plaintiff to a trial by jury, an unequivocal denial that the agreement had been made was needed, and some evidence should have been produced to substantiate the denial."). Thus, in order to receive a trial on the existence of an enforceable contract, Plaintiff must show genuine factual issues regarding his allegations that the making of the agreement was void.

## II. *Analysis*

In response to Defendant's motion to compel arbitration, Plaintiff asserts that he signed the contract under duress, and therefore the entire arbitration agreement is unenforceable. In the alternative, Plaintiff argues that, even if the court finds the agreement enforceable, the presence of two exclusionary clauses in the agreement suffice to exempt Plaintiff's claims of discrimination against the defendant from the scope of the arbitration agreement.

### A. Agreement to Arbitrate

■ In deciding whether parties agreed to arbitrate in accordance with the FAA, courts should generally apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 n.12 (stating the purpose of the FAA "was to make arbitration agreements as enforceable as other contracts, but not more so"). Because the arbitration agreement at issue was signed in Connecticut, Connecticut law is applicable to the contract between parties.

■ However, the Supreme Court has also made clear that in enacting Section Two of the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a juridical forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 7, 104

S.Ct. 852, 79 L.Ed.2d 1 (1984). Accordingly, the FAA preempts all state laws that impermissibly burden arbitration agreements or limit the provisions of the FAA favoring arbitration agreements. *Id; see also, Topf v. Warnaco, Inc.*, 942 F.Supp. 762, 762 (D.Conn.1996) (finding that the FAA preempts a Connecticut statute providing that submission to an arbitration agreement does not bar a person from filing a complaint, as the statute could be interpreted to preclude arbitration of claims). Therefore, only "generally applicable contract defenses, such as fraud, duress, or unconscionability may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). In light of these principles, we examine whether an enforceable arbitration agreement was formed between the parties.

■ In this case, Plaintiff actually signed the arbitration agreement at issue, which serves as presumptive evidence that an agreement was formed. *Gruber v. Louis Hornick & Co. Inc.*, 020 Civ. 5092, 2003 WL 21222541, *2, 2003 Dist. LEXIS 8764, at *6 (S.D.N.Y. May 23, 2003) ("[a] person who signs a contract is presumed to know its contents and assent to them."). Plaintiff is therefore bound by the agreement to arbitrate unless he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *Genesco*, 815 F.2d at 845–46; *Berger v. Cantor Fitzgerald Sec.*, 967 F.Supp. 91, 93 (S.D.N.Y.1997). *See also, International Brotherhood of Teamsters, etc. v. Shapiro*, 138 Conn. 57, 82 A.2d 345, 348 (1951) (asserting duress is a sufficient cause to find a contract void).

■ Plaintiff asserts that he signed the arbitration agreement out of duress because he could not afford to lose his job and was informed by his supervisor that signing the agreement was a condition of employment. This argument lacks merit under federal law as well as Connecticut jurisprudence. It is a well-established principal that "[d]espite the inequality in bargaining power between the employers and employees, conditioning employment upon an agreement to arbitrate does not by itself constitute duress." *Gruber*, 2003 WL 21222541, *2, 2003 Dist. LEXIS 8764, at *6. *See also, Gilmer*, 500 U.S. at 33, 111 S.Ct. 1647 (finding "mere inequality of bargaining power that exists between an employee and an employer is an insufficient reason to find an arbitration agreement unenforceable.") (internal quotation omitted). In the same manner, conditioning further employment on a current employee's agreement to arbitrate, as was the situation in this case, is not enough, by itself, to constitute duress. *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 384 (S.D.N.Y.2002); *Arakawa*, 56 F.Supp.2d at 352. Connecticut courts have similarly found that "[e]ven in those jurisdictions that have expanded the stricter common law definition of duress to include economic or financial compulsion, it is not sufficient to show that consent was secured by the pressure of financial circumstances." *Lawler v. Blazawski*, No. CV 940056909S, 1998 WL 70590, *10, 1998 Conn. LEXIS 392, at *26 (Conn.Super.Ct. February 11, 1998) (citing 25 Am. Jur.2d, *Duress and Undue Influence* § 7).

In order to establish that he was under duress, Plaintiff must therefore show some additional circumstances that indicate he lacked a meaningful choice in deciding whether or not to sign the agreement. *Compare Gruber*, 2003 WL 21222541, *2, 2003 Dist. LEXIS 8764, at *6 (rejecting plaintiff's claim of duress where "her sole allegation is that she was told if she did not sign, she would not be

able to work for defendants."), *and Brennan,* 198 F.Supp.2d at 383 (holding an arbitration agreement invalid where pressure tactics were used and plaintiff was given insufficient time to review agreement); *and Lawler,* 1998 WL 70590, *10, 1998 Conn. LEXIS 392, at *26 (finding in the absence of threats of actual bodily harm, duress will not be found where the contracting party is free to consult with counsel). Morales does not claim he was denied an opportunity to review the document or consult with an attorney. In fact, the agreement he signed includes a clause acknowledging that he was given the opportunity to consult with counsel before signing, and had availed himself of the opportunity to the extent he desired. Rather, Morales rests his claim of duress on the mere fact that he was forced to sign the arbitration agreement due to the financial repercussions he would have faced had he been fired. Accordingly, he has not stated any triable issues of fact on his allegation that he signed the agreement under duress, or any legal basis for voiding the agreement.

### B. Scope of Arbitration Agreement

Plaintiff also contends that his claims of discrimination are beyond the scope of the arbitration agreement, and therefore he cannot be compelled to arbitrate such claims. Plaintiff asserts two arguments, both of which rely on the fact that his employment discrimination claim requires exhaustion of administrative remedies. First, he states that because his discrimination charge under the CFEPA required him to proceed before the Connecticut Commission on Human Rights and Opportunities (CCHRO) before filing a claim in court, that his claim was not "justiciable" as required under the terms of the arbitration agreement, and therefore not subject to arbitration. Secondly, Plaintiff asserts that because the arbitration agreement exempts charges of discrimination filed with

an appropriate agency, that the clause gives him an "unqualified right" to proceed in court after exhausting his administrative remedy.

 Federal policy favors arbitration of disputes, and therefore courts read arbitration clauses broadly, with "any doubts concerning the scope of arbitrable issues [being] resolved in favor of arbitration." *Moses H. Cone Hosp.,* 460 U.S. at 24–25, 103 S.Ct. 927; *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71 (2d Cir.1997); *Genesco,* 815 F.2d at 847. In resolving a dispute over the scope of an arbitration agreement, courts distinguish between " 'broad' clauses that purport to refer all disputes arising out of a contract to arbitration and 'narrow' clauses that limit arbitration to specific types of disputes." *Collins & Aikman Prods. Co. v. Building Sys.,* 58 F.3d 16, 21 (2d Cir.1995) (quoting *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.,* 858 F.2d 825, 832 (2d Cir.1988)). Broad arbitration clauses create "a presumption of arbitrability which is only overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Id.* at 74 (quoting *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The Supreme Court has made clear that "[i]n such cases, '[in] the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.' " *Id.* (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).

 This court finds that the arbitration agreement Morales signed "repre-

sents the prototypical broad arbitration clause." *See e.g. Oldroyd v. Elmira Savings Bank, FSB,* 134 F.3d 72, 76 (2d Cir. 1998) (noting that clauses "submitting to arbitration 'any claim or controversy arising out of or relating to the agreement' is the paradigm of a broad clause.") (quoting *Collins,* 58 F.3d at 20.). The RAC arbitration agreement states that it covers "all claims arising out of Plaintiff's employment and the termination of employment." The agreement also specifically lists a variety of claims to be covered, including tort claims and charges of discrimination. Accordingly, Plaintiff's discrimination and tort claims are presumptively within the scope of the arbitration clause.

While recognizing the broad scope of the agreement, the Plaintiff nonetheless attempts to overcome the presumption in favor of arbitration by arguing that the agreement exempts his discrimination claims from its otherwise broad scope. In light of the strong policy favoring arbitration agreements, Plaintiff's claims must fail. First, Plaintiff's argument that his claims were not "justiciable" as required by the arbitration agreement is in error. The agreement provides that "the only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law." Contrary to Plaintiff's assertion, the exhaustion requirements imposed on him by the statutory right he seeks to enforce do not exempt him from fulfilling his obligations under the arbitration agreement. In any event, Plaintiff's argument is moot because he did properly exhaust his administrative remedies by filing a complaint with the appropriate administrative agency, which issued him a right to sue letter on June 5, 2003. His claim was therefore justiciable in accordance with judicial standing doctrine, and subject to the terms of the arbitration agreement. Defendant in this case did not attempt to compel arbitration while Plaintiff filed his grievances through the administrative process. It was only after Plaintiff exhausted his administrative remedies and filed a complaint with this court instead of submitting his claim for arbitration, that Defendant properly filed this motion to compel.

Secondly, Plaintiff's right to submit a complaint to the CCHRO without first submitting to arbitration does not, as he argues, give him the "unqualified right" to bring the instant litigation before this court. Nor does the fact that the CCHRO issued him a right to sue letter release him from his contractual obligation to arbitrate his claims. The exhaustion of administrative remedies is a jurisdictional matter, the failure of which deprives this court of subject matter jurisdiction to hear a case. *DiLaura v. Power Auth.,* 982 F.2d 73 (2d Cir.1992). Exhaustion requirements are wholly separate from a contractual obligation to arbitrate a claim before initiating litigation. For example, it is well established that the FAA does not confer authority on the courts to stay administrative proceedings to enforce an arbitration agreement. *Oxford Med. Group, P.C. v. Vossoughian,* 154 F.Supp.2d 782 (S.D.N.Y. 2001) (noting "[t]he lack of such provision is consistent with a long-standing public policy of hesitancy to interfere with administrative proceedings before all administrative remedies have been exhausted..."). Likewise, rights created by anti-discrimination statutes such as the CFEPA that require exhaustion of administrative remedies do not preclude the enforcement of arbitration agreements. *See Topf v. Warnaco, Inc.,* 942 F.Supp. 762 (D.Conn.1996) (asserting in an employment discrimination suit, that "[t]he 'duty to enforce [arbitration] is not diminished when a party...raises a claim founded on statutory rights.'") (citing *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)) (alterations in original). Therefore, the

fact that the Plaintiff exhausted the administrative procedures available to him does not negate the limitations he incurred on his right to sue by signing the arbitration agreement.

 Despite being subject to administrative law requirements, the broad language throughout the agreement clearly demonstrates the intent of the parties to submit charges of discrimination to arbitration before filing suit in court. Under Connecticut law, courts infer an intent to refer a specific subject matter to an arbitrator "by an express provision or through the use of broad terms to describe the scope of arbitration, such as, 'all questions in dispute and all claims arising out of the contract.'" *City of Bridgeport v. Bridgeport Police Local 1159, etc.*, 183 Conn. 102, 438 A.2d 1171, 1173 (1981) (quoting *Bd. of Educ. v. Frey*, 174 Conn. 578, 392 A.2d 466, 467 (1978)). In this case, there is both an express provision designating the arbitration clause applies to discrimination claims based on race, ethnicity and sexual orientation, as well as general terms providing that all claims arising out of employment were within the scope of the agreement. Thus, the plain language of the contract demonstrates that the parties intended to arbitrate Plaintiff's grievances.

Further, the Second Circuit instructs us that "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Oldroyd*, 134 F.3d at 77. In Plaintiffs' complaint, he details specific instances of discriminatory conduct he was subjected to, including rudeness at work, changes in his responsibilities, and denial of breaks that are required by law. These factual allegations clearly arose out of the Plaintiff's employment and termination of employment, and therefore lie within the scope of the arbitration agreement.

Finally, Plaintiff's reading of the arbitration agreement violates a "cardinal principle of contract construction." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). In *Mastrobuono*, the Supreme Court instructs "that a document should be read to give effect to all its provisions and to render them consistent with each other." *Id.* (citing Restatement (Second) of Contracts §§ 202(5) & 203(a)). In *Mastrobuono*, the Court rejected a reading of an arbitration agreement which "set[ ] up the two clauses in conflict with one another: one foreclosing punitive damages, the other allowing them." 514 U.S. 52 at 64, 115 S.Ct. 1212, 131 L.Ed.2d 76. Similarly, in this case, Plaintiff interprets two clauses in the arbitration agreement as incompatible: one that specifically includes claims for discrimination, and one that he asserts precludes his discrimination claims from the scope of the agreement. This court finds Plaintiff's construction untenable. Plaintiff misconstrues the agreement's limited exemption of administrative charges of discrimination from mandatory arbitration procedures as creating an "unqualified" right to initiate subsequent litigation on the same claim. On the contrary, this court finds that this exemption merely recognizes that the FAA does not extend to administrative procedures and thereby complies with administrative law. In no way does this limited exemption intrude on the unambiguous language of the rest of the agreement providing that discrimination claims are subject to arbitration before either party can initiate a lawsuit. Thus, this court finds as a matter of law that Plaintiff's discrimination claims are within the scope of the arbitration agreement.

### Conclusion

Accordingly, the court finds the evidence presented by Plaintiff insufficient to create

a genuine issue of material fact concerning the existence or scope of the agreement. There is nothing in the record or the law which warrants a finding that the arbitration agreement was not valid, or that it did not encompass Plaintiff's discrimination claims. Therefore, Plaintiff's motion for jury trial [Doc. No. 17] is denied. Defendant's motion to stay the proceedings and compel arbitration [Doc. No. 7] is granted.

SO ORDERED.